## ADMINISTRATION OF ESTATE OF A DECEASED SUBJECT OF ITALY.

Probate Court of Mahoning County.

IN RE ESTATE OF FRANCESCO TODARELLO, DECEASED.

Decided, December 23, 1913.

*Estates of Decedents—Swedish Treaty Requires Notice to Italian Consul of Death of Italian Subject, When—Right of Consul to Appointment as Administrator Exists, When—Opinion of U. S. Supreme Court Construed.*

A consular agent of the Kingdom of Italy has neither an exclusive nor a naked right, under treaty stipulations or within the class designated in Section 10617, General Code, to appointment as administrator of the estate of an Italian subject dying intestate in this state, where one of the next of kin is a resident of the state; nor is he entitled to notice of the death of a subject of the King of Italy, unless there are no known heirs in this country and he is himself a resident of the county in which the appointment is to be made or has a representative in such county who has been duly certified to the court.

DAVIS, J.

Heard on motion to revoke letters of administration and remove administrator.

Francesco Todarello, deceased, at the time of his death was a subject of Italy, residing at Lowellville, Mahoning county, Ohio, and left surviving him as his only heirs at law and next of kin Guiseppe Todarello, a brother, residing at Lowellville, O.; also Mary Todarello, Committa Todarello, Carmela Todarello, as sisters, and Vincenzo Marabetti, half-brother, all of whom are subjects and residents of Italy.

Guiseppe Todarello, brother of decedent living in this country and within the jurisdiction of this court, made application for and qualified as administrator of the estate herein on or about the 12th day of September, 1913.

On or about October 13, 1913, Biagio Sancetta filed his motion herein alleging that Nicola Cerri is the duly appointed and

qualified consular agent of the Kingdom of Italy in and for Northern Ohio, including Mahoning county; that the said Nicola Cerri is temporarily absent from the United States and that during said absence, he, the said Biagio Sancetta, is the duly appointed, qualified and acting consular agent of Northern Ohio including Mahoning county, and prays for the removal of the administrator herein and that as acting consul, he be appointed instead of said administrator, and complains as follows:

"*First.* That as such acting consular agent by virtue of the treaty of 1911 between Sweden and the United States, which he has a right to invoke under the most favored nation clause of the treaty of 1878 between the Kingdom of Italy and the United States, he has the paramount and exclusive right to administer the estate herein.

"*Second.* That by virtue of the treaty of 1878 between Italy and the United States, he was entitled to notice from this court before the legal appointment of an administrator could have been made herein; that no notice was given."

In support of the motion as to the alleged exclusive right of the Italian consul to administer the estate herein, there has been cited as construing that right in said treaty of Sweden the case of *Rocco* v. *Thompson,* decided by Judge Day of the Supreme Court of the United States; and the decisions of other inferior courts that have based their opinions on an erroneous construction of Judge Day's obiter dictum, in that case, as to rights of consuls under the treaty of 1911 between Sweden and the United States.

In the case of *Rocco* v. *Thompson,* Rocco, an Italian consul within and for certain portions of the state of California, taking advantage of the Argentine treaty of 1853, by virtue of the most favored nation clause of the treaty of 1878 between the Kingdom of Italy and the United States claimed the right as against Thompson, public administrator of California, to administer the estate of Giuseppe Ghio, an Italian subject dying intestate in the state of California. Judge Day, in holding against the contention of the consul and in favor of the appointment of the public administrator, says:

"It is further to be observed that treaties are the subject of careful consideration before they are entered into, and are drawn by persons competent to express their meaning and to choose apt words in which to embody the purposes of the high contracting parties.    Had it been the intention to commit the administration of estates of citizens of one country, dying in another, exclusively to the counsul of the foreign nation, it would have been very easy to have declared that purpose in unmistakable terms.

"For instance, where that was the purpose, as in the treaty made with Peru in 1887, it was declared in Article 33, as follows:

" 'Until the conclusion of a consular convention which the high contracting parties agree to form as soon as may be mutually convenient, it is stipulated, that in the absence of the legal heirs or representatives the consuls or vice-consuls of either party shall be ex-officio the executors or administrators of the citizens of their nation who may die within their consular jurisdictions, and of their countrymen dying at sea, whose property may be brought within their district.' "

Following the above quotation, from the Peru treaty, by Judge Day, in his opinion in the *Rocco* v. *Thompson* case, to illustrate exclusive power given to a consul by treaty, in contract with the language of the Argentine treaty which simply gives as he holds the right to intervene by taking possession of and preserving property of his subjects, before the appointment of an administrator, and also to intervene after an administrator has been appointed if administration was not being properly conducted for the purpose of further protecting the estate of the deceased subject of his country, he quotes the second paragraph of Article XIV of the treaty between Sweden and the United States, which language is as follows:

"In the event of any citizens of either of the contracting parties dying without will or testament, in the territory of the other contracting parties the consul-general, consul, vice consul-general of the nation to which the deceased may belong, or in his absence, the representative of such consul-general, consul, vice consul-general or vice-consul, shall, so far as the laws of each country will permit and pending the appointment of an administrator and until letters of administration have been

granted, take charge of the property left by the deceased, for the benefit of his lawful heirs and creditors, and moreover, have the right to be appointed as administrator of such estate.''

But before quoting from the Sweden treaty and after quoting from the Peru treaty, he uses the following language: ''and in the convention between the United Stat s and Sweden proclaimed March 20th, 1911, it is provided.''

. Judge Day does not state here in his introduction to the quotation from the Sweden treaty that there is an exclusive right as he does in his introduction to the quotation from the Peru treaty by using the words ''as where that was the purpose.'' The antecedent of the words ''as where that was the purpose'' being ''had it been the intention to commit the administration of estates of citizens of one country, dying in another, exclusively to the consul of the foreign nation, it would have been very easy to have declared that purpose in unmistakable terms.'' If Judge Day had so intended that there was an exclusive right in the consul to administer by virtue of the language in the Sweden treaty, he would have so stated before quoting it as he did before quoting the clause from the Peru treaty; or would have immediately followed the clause quoted from the Peru treaty with the clause quoted from the Sweden treaty and made his first introduction to said quotations plural. Judge Day, in my opinion, in quoting from the Peru and from the Sweden treaty attempted to illustrate what he had stated in the prior part of his opinion, that treaties are drawn by persons competent to express their meaning and that nothing should be added to or taken away from the language of said treaties. That is, he aimed to point out (1) that in the Argentine treaty there was, by virtue, of the language of said treaty absolutely no right whatever in the consul under said treaty to administer estates but simply to intervene and protect estates. (2) That in the Peru treaty there was an exclusive right given to administer in the absence of legal heirs. (3) That in the Sweden treaty there was a naked right given to administer, but not an exclusive right, so that there is a distant and absolutely different right

given to consuls in each treaty.  In other words, the Argentine treaty gives simply the right to intervene, both before and after the appointment of an administrator; in the Sweden treaty not only the right to intervene but also the right to administer, but not an exclusive right to administer, for if so it would have stated as in the Peru treaty.  In the Peru treaty, there is given not only the right to intervene as in the Argentine treaty, and not only the additional naked right to administer as in the Sweden treaty, but also the paramount exclusive right to administer the estate of subjects of the consul's country, dying intestate in this country, with no known heirs here.

Keeping in mind the fact that treaties entered into between the United States and any foreign country are superior to the laws of the United States or of the several states where there is any conflict, and also that the consul of any foreign country, by virtue of a most favored nation clause, in the treaty of his country with the United States, has the power to invoke the rights of any other treaty entered into by the United States with any other foreign country, I am of the opinion that there is no right in either the Italian or Sweden treaty which revokes any of the statutory rights conferred by Section 10617, General Code of Ohio.  Also that the Italian treaty of 1878 does not enlarge by constituting the consul a person in either of the four classes of said Section 10617 of the General Code of Ohio entitling him to the right of appointment as administrator.

Now as to whether or not the Sweden treaty enlarges the powers of said Section of our General Code in behalf of the consul, let us suppose that under said treaty the consul had in any or all of the four different classes of said Section 10617 of our Code a right to be appointed, it could not be considered by any court, in my opinion, as an exclusive right, but simply as a naked right with others in the same class, thus placing with the court the right to consider the consul in selecting from each class in order of priority—for the best interests of the estate.  Even then, it would be optional with the court in this case as to whether he would appoint the brother of decedent or the consul of Italy.

As a final conclusion on this point, I am of the opinion that the Sweden treaty enlarges on the said section of the General Code of Ohio only as to the fourth class, by placing the consul on a par with all other persons included in said class of said Section 10617, as entitled to appointment, or in other words, entitling him to protection against discrimination because he is a foreigner. Under no circumstances is there an enlargement of rights as to persons entitled under the first or second class of said section of our General Code, for neither treaty entitles the consul to notice of the death of the deceased subject of his country, dying intestate in this country, unless there be no known heirs of the deceased in this country. If he were given the right to administer where there are known heirs, in this country, he most certainly would be given the right of notice. See *In re Savario Costanzo Estate* 15 N.P.(N.S.), 225, and *In re Celeste Andreano Estate,* by Judge Alexander Haddon, Probate Judge of Cuyahoga County, Ohio. *In re Carmelo Gurrieri's Estate,* by Judge William J. Martin of Essex county, N. J. Also *In re Lis Estate,* Supreme Court of Minnesota in 139 N. W. Reporter, 300.

### As to the Question of Notice.

1.   Article XVI of the Italian treaty requires notice only in case of no known heirs of the deceased; Article 14 of the Sweden treaty requires notice only in case of no known heirs of deceased in this country.

Deceased had a brother, a next of kin heir, appointed administrator herein, residing within this county. The consul therefore can not claim notice under either treaty.

2.   The court has held that the consul has neither an exclusive nor a naked right to appointment as administrator within the class of Section 10617 of the General Code of Ohio where decedent's brother stands and, therefore, said consul is not entitled to notice by virtue of the laws of Ohio.

3.   Let us suppose either or both: (1) that there was no known heir in this country; (2) that said consul came within

the class of said section of our General Code entitling him to notice, yet to get the benefit of that right whether given by local law or treaty, he must bring himself within the jurisdiction and operation of the procedure of the court by being a resident of the county or by having a representative in the county certified to the court as such, so that the court's arm can reach him with its citation or notice.   Treaties define rights and before consuls can demand those rights, they must comply with the laws of procedure of the different jurisdictions.

The consul, in this case, is a resident of Cuyahoga county, and having no representative in Mahoning county, would not be entitled to notice even under the above presumed facts.   See *In re George Stingacs,* 12 N.P.(N.S.), 107.

The motion to remove the present administrator and revoke his letters of administration is hereby overruled, and entry of decree is ordered accordingly.